UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARTINEZ WARREN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 1:15CV00091 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Martinez Warren, a person in federal custody. On July 21, 2014, Warren plead guilty before this Court to the offense of aiding and abetting the burglary of a pharmacy and aiding and abetting the possession with intent to distribute controlled substances and, on December 1, 2014, this Court sentenced Warren to the Bureau of Prisons for a term of 81 months. Warren's § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## **FACTS**

**A. The Indictment.**

On March 20, 2014, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned a two-count Indictment against Martinez M. Warren. Count I of the Indictment charged that on or about January 12, 2014, Warren, aided and abetted by his co-defendants, committed the crime of Aiding and Abetting the Burglary of a Pharmacy

in violation of Title 18, United States Code, Section 2118(b) and (c)(1) and Title 18, United States Code, Section 2. Count II of the Indictment charged that Warren, aided and abetted by his co-defendants, committed the crime of Aiding and Abetting the Possession of Controlled Substances With the Intent to Distribute in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2. On March 27, 2014, Warren made his initial appearance on the federal charges. After the initial appearance, Jacob Zimmerman was appointed to represent Warren. Warren was arraigned on April 1, 2014. At that arraignment, Warren pled not guilty to the charges.

**B. Pretrial Motions.**

On April 21, 2014, Warren's attorney filed a Waiver of Filing of Pretrial Motions. In that Waiver, Warren's attorney represented that his client did not want to file any pretrial motions. On May 1, 2014, Warren appeared before United States Magistrate Judge Abbie Crites-Leoni and formally waived his right to file pretrial motions. His case was set for trial or plea on June 23, 2014. Warren's attorney filed a motion to continue that trial/plea hearing. That motion was granted and Warren's trial/plea hearing was reset for July 21, 2014.

**C. Plea Agreement.**

The parties signed a written plea agreement that set out the terms and conditions of Warren's guilty plea to the charges. The Government agreed that, in exchange for Warren's guilty plea to the charges, the Government would not charge Warren with any further charges related to the burglary of Davis Pharmacy on January 12, 2014. The parties also agreed:

The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

Plea Stip., p. 2.

The Plea Agreement contained an agreed-upon Statement of Facts as to Warren's offense conduct:

On January 12, 2014, at around 2:46 a.m., Craig Nelson and his wife, Cynthia Nelson, were asleep in their home on Mott Street in New Madrid, Missouri. They were startled from their sleep by the sound of a car door slamming and their dog barking. The Nelsons looked out of one of their windows and saw a silver Buick vehicle backed up to the front door of Davis Pharmacy. Two men were out of the car. One of the men broke the glass out of the front door. Both of those men entered the pharmacy. A third person was seated in the Buick. Mrs. Nelson called the New Madrid police department to report the burglary.

After a few minutes, the two men came out of the pharmacy, carrying large duffel bags. They got in the Buick, which drove off the parking lot. The Nelsons saw a New Madrid police vehicle arrive at the parking lot just behind the Buick. Officer John Dubois was driving the New Madrid police vehicle. He began chasing after the Buick. Other officers were called to the chase, which continued to Highway 55 and onto side roads. During the chase, the occupants of the Buick began throwing items out of the Buick. The officers later recovered some of those items, which included medications stolen from Davis Pharmacy, clothing and a wood maul.

The officers were able to get two of their patrol cars in front of the Buick. The driver of the Buick attempted to ram the Buick into the officers' cars, putting the lives of the officers at risk. The officers managed to evade the Buick. The chase continued for several miles until the officers began shooting at the Buick with their firearms. The Buick then turned into the Pilot Truck Stop parking lot and stopped. Officers arrived and arrested the occupants of the Buick. Those occupants were Troy D. Stephenson, Billy G. Biggs and Martinez M. Warren. The Buick was a rental vehicle that had been driven by Stephenson, Biggs and Warren from their homes in Memphis, Tennessee, that same day as the burglary.

> Davis Pharmacy employees examined the store and determined that $27,243.66 in prescription medications had been stolen. Those stolen medications included oxycodone, hydrocodone and morphine. The total amount of drugs stolen amounted to $27,243.66. Repairs to the Davis Pharmacy building totaled $815.62. Davis Pharmacy is a pharmacy that was registered with the Drug Enforcement Administration under Section 302 of the Controlled Substances Act.
>
> The employees determined that only selected medications were taken. The medications taken by Stephenson, Biggs and Warren are commonly sold illegally. Officers reviewed the types of medications taken by Stephenson, Biggs and Warren and came to the opinion that the three men took the medications in order to distribute them to others for cash or other consideration and that the medications were not to be used for their personal use.
>
> The location of the burglary of Davis Pharmacy by the defendant was in New Madrid County, Missouri, within the Eastern District of Missouri.

Plea Stip., pp. 3 – 5.

The parties did not reach any agreement as to Guideline Offense Levels, except that Warren was to receive a reduction of three levels for timely acceptance of responsibility. The parties did not come to any agreement as to Warren's Criminal History Category. (Plea Stip., p. 6)

Warren and the Government agreed to waive their rights to appeal any within-Guidelines' range sentence. Warren reserved the right to appeal any sentence imposed above the Guidelines range. The Government reserved the right to appeal any sentence imposed below the Guideline range. (Plea Stip., p. 7) Warren agreed to waive his right to file a petition pursuant to Title 26, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Plea Stip., p. 7)

**D. The Plea Hearing:**

On July 21, 2014, this Court conducted a plea hearing in this case. Warren appeared with his attorney. Warren was sworn and answered questions put to him by this Court. Warren stated that he had no complaints concerning his attorney and was satisfied with the way his attorney had handled his case. (Plea Tr., p. 6)

Warren stated that he had reviewed the written Plea Agreement and that his attorney had gone over it in detail with him. (Plea Tr., p. 7) Warren agreed that he understood that his sentence would be influenced by the advisory Sentencing Guidelines, but that the eventual sentence would be up to this Court. (Plea Tr., pp. 10 – 11) Warren understood that the range of punishment for Count I was a term of imprisonment up to twenty five years and for Count II, the range of imprisonment was up to twenty years. Warren understood that this Court would consider the full range of punishment. (Plea Tr., pp. 10 – 11)

The Government recited the facts of the case that were set out in the written Plea Agreement. (Plea Tr., pp. 12 – 14) Warren agreed that the Statement of Facts was true and correct. (Plea Tr., p. 15) Warren admitted that he committed each and every element of both offenses. (Plea Tr., pp. 15 – 16) Warren then pled guilty to Counts I and II of the Indictment. (Plea Tr., p. 16) A sentencing hearing was set for Warren for December 15, 2014.

**E. The Presentence Investigation Report.**

A Presentence Investigation Report (P.S.R.) was prepared by United States Probation Officer Sherry L. Persinger. That report recommended that Warren's base offense level be set at 24, pursuant to U.S.S.G., § 2D1.1(a)(5), due to the drug quantity

involved in this case (P.S.R., ¶ 26) The P.S.R. recommended that six levels be added for an assault on a law enforcement officer during the commission of the offense or immediate flight from that offense, pursuant to U.S.S.G., § 3A1.2(c)(1). Two levels were added for creating a substantial risk of death or serious bodily injury during the flight from the crime, pursuant to U.S.S.G., § 3C1.2. (P.S.R., ¶ 30) With three levels of a reduction for acceptance of responsibility, Warren's Total Offense Level was 29. (P.S.R., ¶ 35)

Warren's criminal history was remarkable and is set out below. Warren's first brush with a criminal violation occurred when he was a juvenile at age 14. At that time, he was adjudicated as a minor who was in possession of cocaine. The offense occurred when Warren attempted to pass cocaine to another student in a class. No criminal history points were assessed to this adjudication. (PSR, p. 8, 9)

At age 16, Warren received another juvenile adjudication, but this time for a much more serious offense. Warren's cousin was involved in a verbal altercation with another person. The cousin informed Warren of the argument and pointed out the other person to Warren. Warren then shot the other person with a firearm. Warren was placed in a youth center in Tennessee for this violation. He was released to his parents on June 26, 1993. No criminal history points were assessed for this violation. (PSR, p. 9)

Less than one year after being released to his parents, Warren committed a Robbery offense by carjacking a vehicle from another person. Warren was 17 years old at this time. He was certified and convicted as an adult for this offense. His sentence was six years imprisonment, but that sentence was suspended and Warren was ordered to serve

one year of probation. That probation was revoked on February 14, 1996, with Warren being ordered to serve 9 months of imprisonment, but only by serving it on weekends, to be followed by one year of probation. On February 4, 1997, his weekend privileges were revoked and he was ordered to serve 9 months imprisonment. Again, Warren did not receive any criminal history points for this crime. (PSR, p. 10)

At age 20, Warren committed the offense of Attempted Theft. He was sentenced to one year in custody and fined $500. This offense involved Warren's stealing a vehicle, which was found with him inside it and the steering column broken. No criminal history points were assessed for this offense. (PSR, p. 10, 11)

At age 21, Warren committed the misdemeanor offense of Assault. The victim, who was six months pregnant, was punched in the face by Warren after the victim had asked some gang members to leave her property. Warren received 63 days imprisonment for that conviction, but 60 days of that sentence was suspended. Eventually, Warren violated the terms of his probation and had to serve the 60 days in jail. No criminal history points were assessed for this violation. (PSR, p. 11)

One month and ten days after being sentenced for the Assault, Warren committed the misdemeanor offenses of Reckless Driving and Evading Arrest. This offense involved Warren driving a vehicle in a reckless manner. When he stopped the car, Warren fled on foot. Warren was sentenced to a term of imprisonment of seven days for this offense. No criminal history points were assessed for this violation. (PSR, p. 11)

At age 22, Warren committed the misdemeanor offense of Driving While Suspended. He was sentenced to three days custody for this violation. No criminal history points were assessed for this violation. (PSR, p. 12)

At age 23, Warren committed the misdemeanor offense of Driving While Suspended. He was sentenced to five days custody. No criminal history points were assessed for this violation. (PSR, p. 12)

A few months later, Warren committed the misdemeanor offense of Gambling. He was sentenced to one day of custody. No criminal history points were assessed for this offense. (PSR, p. 12)

During 2000 and 2001, Warren was convicted twice for Driving While Suspended and once for Failure to Appear for Booking or Processing. No criminal history points were assessed for these three misdemeanor convictions. (PSR, p. 13)

At age 26, Warren was convicted of the felony of Theft of Property over $500. The facts of the case reveal that Warren actually committed the offense of Armed Robbery. The PSR reflects that Warren pointed a rifle at the victim and stole property from her. The victim stated that Warren took her purse. Warren denied taking the purse and claimed that he stole two pounds of marijuana from the woman. Warren was sentenced to a term of imprisonment of one year for this conviction, but was paroled after serving less than two months. No criminal history points were assessed for this conviction. (PSR, p. 14)

At ages 27, 28 and 29, Warren committed the misdemeanor offense of Driving While Suspended six additional times. He was assessed two criminal history points for those convictions. (PSR, p. 14, 15, 16, 17)

At age 29, Warren committed the felony offense of Possession of a Controlled Substance. He was sentenced on October 23, 2006, to a year of custody, but was released less than two months later to probation. The PSR reflects that Warren, instead of merely possessing marijuana, actually possessed 613 grams of marijuana that was wrapped in several plastic bags. Warren was a passenger in the car, but a pistol was found under the driver's seat. Warren received one criminal history point for this conviction. (PSR, p. 15, 16)

Again, at age 29, Warren committed the felony offense of Possession of a Controlled Substance With the Intent to Sell. It is interesting to note that Warren committed this offense while he was on bond, but before sentencing, after being caught with the 613 grams of marijuana in the previous felony case. Warren was sentenced to serve 45 days in custody for that conviction. He received one criminal history point. (PSR, p. 16)

At age 30, Warren committed the federal felony offense of Felon in Possession of a Firearm. In that case, Warren was found to be in possession of a fully automatic rifle that had been stolen from a police vehicle. Warren admitted that he knew the rifle was stolen and that he intended to sell it for a profit. Warren was sentenced to serve a period of imprisonment of 48 months for that conviction and received three criminal history points. (PSR, p. 17, 18)

Warren continued to drive with a suspended license, receiving five additional convictions for that offense at ages 35 and 36. Warren did not receive any criminal history points for those convictions. (PSR, p. 18)

The P.S.R. recommended that Warren's Criminal history category be set at III, which resulted in a recommended Sentencing Guideline range of 108 to 135 months.

**F. Objections to the Presentence Investigation Report.**

On September 17, 2014, the Government filed an Objection to the P.S.R., asserting that Warren's Criminal History Category was understated. The Government requested an upward departure for that reason and/or an upward variance at that time.

On November 30, 2014, Warren's attorney filed an objection to the P.S.R. in which he objected to the calculation of the base offense level based on drug quantity. He objected to the six level enhancement under Paragraph 28 for assaulting a law enforcement officer during the flight from the crime. Another objection was based on Paragraphs 125 and 128, which stated that the District Court might consider an upward departure for Warren's past criminal conduct involving shooting another person. The last paragraph of that pleading requested that this Court impose a sentence below the applicable Guideline range.

On December 11, 2014, the Government filed its Sentencing Memorandum explaining why it was asking for an upward departure and/or variance for Warren. As part of that pleading, the Government conceded Warren's objection to the six level offense level enhancement for assaulting a law enforcement officer. The Government also stipulated that the two level enhancement for creating a substantial risk of death or

injury to another during the flight from officers did not apply in his case. The Government noted that, if this Court agreed with the Government, Warren's new Total Offense Level would be 21, his Criminal History Category would be III, resulting in a Sentencing Guideline range of 46 to 57 months.

The Government then detailed the nature of Warren's extensive criminal history and the violence that occurred during that offense conduct. The Government asked for an upward departure for an understated Criminal History Category and requested a final sentence of 96 months imprisonment.

### G. The Sentencing Hearing.

On December 14, 2014, this Court conducted a sentencing hearing. This Court noted that the Government had agreed that Warren's offense levels were overstated by eight levels in the P.S.R., finding that his Total Offense Level was 21, that Warren's Criminal History Category was III, and that his Guideline range of imprisonment was 46 to 57 months imprisonment. (Sent. Tr., p. 9) This Court found that Warren's Criminal History Category was understated. (Sent. Tr., p. 10)

After argument and allocution, this Court imposed a sentence of 81 months imprisonment on each count, to be served concurrently with each other and any other state sentence, three years of supervised release and a $200 special assessment. (Sent. Tr., pp. 12 – 17)

### H. The Appeal.

Warren did not appeal his conviction or sentence.

### I. Petition for Post-Conviction Relief Pursuant to § 2255.

On June 15, 2015, Warren filed his Petition under 28 U.S.C. § 2255, asking that this Court set aside Warren's conviction and sentence. Warren alleges several errors in his conviction, including his complaint that: (1) his attorney was ineffective for failing to object to the Government's request for an upward departure and/or variance; (2) this Court failed to provide advance notice that it was considering an upward departure; and (3) that the Government was improperly motivated to ask for an upward departure after a downward adjustment of the offense levels applicable to Warren.

Warren's complaints all center around his factual assertion that the Government failed to file its notice that it was seeking an upward departure for an understated criminal history category on time. Warren claims that the notice was filed only four days before the sentencing hearing and his Plea Agreement required at least a ten day notice. The glaring flaw in Warren's argument is that the Government first filed its notice that it was seeking an upward departure on that basis on September 17, 2014, giving Warren much more than ten days notice of the Government's intent to seek this upward departure. Warren ignores that September 17 filing and asserts error.

None of Warren's complaints have any merit.

## APPLICABLE LAW

**A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF**

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of Strickland to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

## DISCUSSION

This Court will address each complaint made by Warren that he presented in his Petition.

### A. Warren's attorney was not ineffective for failing to object to the Government's request for an upward departure and/or variance.

In this issue, Warren noted the language of the parties' written Plea Agreement to the effect that:

> The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

Plea Stip., p. 2.

Warren states that the Government filed its Sentencing Memorandum on December 11, 2014, which was four days before Warren's sentencing hearing on December 15, 2014. Warren believes that the Government violated the above-cited term of the parties' written Plea Agreement by filing its request for an upward departure only four days before the sentencing hearing (thereby violating the Plea Agreement) and that his attorney was ineffective for failing to object to the Government's request.

However, Warren completely ignores the Government's notice to him that it would seek an upward departure for an understated Criminal History Category that was filed on September 17, 2014. This occurred more than two months before his actual sentencing hearing. Warren had months of advance notice and the Government's notice vastly exceeded what was required under the Plea Agreement. There was no violation of the parties' plea agreement by the Government's request, nor was Warren prejudiced. The Government set forth more detailed reasons for its September 17 request for an upward departure in the December 11 pleading, but Warren knew full well that the

16

Government was going to make that request. Warren cannot complain of surprise or misconduct on the Government's part.

There was no basis for Warren's attorney to object to the Government's request for an upward departure. Warren's attorney was not ineffective on this basis.

> **B. This Court did not commit any error in not providing advance notice to Warren that it was considering an upward departure; Warren's attorney was not ineffective for failing to object.**

In this ground, Warren contends that this Court erred in considering an upward departure without providing advance notice to him. Warren cites Federal Rule of Criminal Procedure 32(h) and claims that this Court acted on its own motion. Warren comes to that conclusion by his self-serving assertion since the Government's notice of its intent to seek an upward departure was filed on December 11, the Court couldn't use that as a basis for an upward departure, and therefore, the Court's decision to upwardly depart must have been on its own motion.

Rule 32(h) states:

(h) Notice of Possible Departure from Sentencing Guidelines. Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Rule 32(h).

Of course, this Court was not acting on its own motion; it was acting on the Government's September 17, 2014, motion.

Again, Warren fails to recognize that the Government gave him much more than ten days notice of its intent to seek an upward departure when it filed its Objection to the Presentence Report on September 17, 2014. The record at sentencing is clear that this Court was granting the Government's Motion for an Upward Departure for an Understated Criminal History, when the Court stated, at sentencing:

Court: . . . I am willing to grant the motion for upward departure.

Sent. Tr., p. 10, lines 13-14.

This Court did not act on its own motion, but acted on the Government's motion, which was filed months before it was required to be filed. Warren has no valid issue in this regard.

> **C. The Government was not improperly motivated to ask for an upward departure after a downward adjustment of the offense levels applicable to Warren.**

In this issue, Warren contends, without factual allegations, that the Government was improperly motivated to seek an upward departure in his case. Warren claims that the Government only sought to obtain an upward departure for an understated criminal history because it was disappointed in losing the Guidelines enhancement for assaulting a police officer and putting other citizens in danger during the escape.

The initial "disclosure" P.S.R. for Warren was filed on September 15, 2014. The Government's notice that it was going to ask for an upward departure was first filed two days later, on September 17, 2014. When the disclosure P.S.R. was filed, the Government did not know that Warren was going to object to the Guideline enhancements due to the police chase. The Government was unaware that those Sentencing Guideline

18

enhancements were improper. The record makes clear that the Government was asking for an upward departure for an understated Criminal History Category, <u>even with the Guideline enhancements</u>. The Government wasn't satisfied with the prior Guideline range of 108 to 135 months as asked for an upward departure at that time. The Government's position didn't change after it conceded that the enhancements didn't apply. The Government merely continued to pursue its original position, that Warren's Criminal History Category was severely understated.

Warren accuses the Government of misconduct, but fails to recognize the consistency of the Government's actions and requests. There was no error by this Court in this issue and no misconduct by the Government.

## CONCLUSION

For the foregoing reasons, this Court denies Warren's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Warren has not made a substantial showing of the denial of a federal constitutional right.

Dated this 10th day of September, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE